UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KICK,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. ED CV 13-1444-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Widower's Insurance Benefits ("WIB"). He claims that the Administrative Law Judge ("ALJ") erred when he found that Plaintiff was not credible, failed to contact the treating doctors to further develop the record, and determined Plaintiff's residual functional capacity. For the reasons explained below, the Court concludes that the ALJ did not err.

## II.  SUMMARY OF PROCEEDINGS

In February 2010, Plaintiff applied for WIB based on chronic pain in his neck, shoulder, elbow, and hands; nerve surgeries; post-laminectine syndrome; osteoarthritis; fibromyalgia; lumbar disc

degeneration; triglyceride anemia; and depression. (Administrative Record ("AR") 96, 103, 130, 175.) His application was denied initially and on reconsideration and he requested and was granted a hearing before an ALJ. (AR 60-61, 65, 68-79, 84-86.) On November 17, 2011, he appeared with counsel and testified at the hearing. (AR 33-59.) On December 29, 2011, the ALJ issued a decision denying benefits. (AR 11-21.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-7.) He then commenced this action.

### III.   ANALYSIS

A.   The Development of the Record

Plaintiff contends that the ALJ erred when he failed to obtain additional medical records from his treating physicians. (Joint Stip. at 3-5.) For the following reasons, the Court concludes that the ALJ did not err.

ALJs have a duty to fully and fairly develop the record, which duty is triggered by inadequate or ambiguous evidence that impedes an ALJ's ability to properly evaluate a claim. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e). A claimant has a corresponding duty to perfect the record because he bears the burden of proving his entitlement to benefits, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), and cannot meet that burden if he does not provide the medical records to support his claims. Furthermore, even when the ALJ errs in failing to develop the record, the claimant has the burden of proving that he was prejudiced by the error. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2010) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

1  In his decision, the ALJ observed:

2  The claimant's doctors have noted that they prepared documents
3  for the claimant's lawyer to use to support his disability
4  application, however since they do not appear to have been
5  submitted, and considering the related treatment notes reveal
6  good functioning, they would not have bolstered the claimant's
7  application.
8  (AR 19.)

9  Plaintiff argues that, because the ALJ knew that these documents
10 existed, he had a duty to ask about them and, by failing to do so, he
11 failed to protect Plaintiff's interests. The Court disagrees. First,
12 Plaintiff and his counsel were obviously aware of these documents and
13 they never submitted them before the hearing. At the end of the
14 hearing, the ALJ asked counsel if there was anything else for him to
15 consider and counsel told him "no." (AR 58.) The ALJ was free to
16 rely on this representation. After the hearing, Plaintiff and his
17 counsel did not submit these records to the ALJ or the Appeals
18 Council. Nor have they submitted them to the Court so that the Court
19 could consider their significance in reaching its decision in this
20 appeal. The inference the Court draws from Plaintiff's and his
21 counsel's actions (or lack thereof) is that there are no records from
22 the treating doctors that would establish that Plaintiff was disabled
23 during the relevant period. As such, the Court concludes that the ALJ
24 did not err by failing to pursue these records and that, even if he
25 did, any error was harmless.[1]

---

27  [1] Plaintiff failed to direct the Court where to look in the
almost 1500-page record for information about the additional records.
28  After combing through the record, the Court located a reference to

B.   The ALJ's Credibility Determination

Plaintiff testified at the administrative hearing that he suffered from constant pain all over his body that prevented him from engaging in most physical activities. (AR 40-50.) The ALJ rejected this testimony because Plaintiff's reported activities were inconsistent with his alleged limitations. (AR 17.) Plaintiff contends that this was not a clear and convincing reason for rejecting his testimony. (Joint Stip. at 14-15.) For the following reasons, the Court disagrees.

ALJs are tasked with judging the credibility of the claimants. In making these determinations, they may employ ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But, where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified at the hearing that he suffered from constant pain throughout his body, could not lift more than a gallon of milk, could not sit or stand for more than five or ten minutes at a time, and spent 95% of his time lying down. (AR 41-46.) He also testified

---

"paperwork" in May 2011, six months before the hearing, by Plaintiff's therapist, who notes that Plaintiff had brought in a form from his lawyer for his therapist or psychiatrist to fill out. (AR 1249.) There is no evidence that this paperwork was ever completed or that, if it was, it would have bolstered Plaintiff's case.

4

that he could barely walk 100 feet to his mailbox and needed help caring for himself. (AR 48, 49-50.)

In rejecting this testimony, the ALJ pointed to Plaintiff's medical records, which he found inconsistent with Plaintiff's testimony. (AR 17.) They revealed, for example, that, in 2008--the most relevant period due to the fact that Plaintiff's date last insured was July 3, 2008--Plaintiff reported to his therapist that he had gone swimming, fishing, and walking around his neighborhood, activities which conflicted with his testimony that he could barely do anything except lie down. (AR 317-24.) In April 2009, he reported, among other things, that he was being "harassed" by a new ranger at his "regular fishing place." (AR 349.) In August 2009, he reported that he had been walking more and had lost weight. (AR 357.) In September 2009, he told his therapist that he was continuing to get out of the house to walk. (AR 361.)

The ALJ's rejection of Plaintiff's testimony on the ground that it was inconsistent with his statements to his doctor is supported by the record and is affirmed. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

C. <u>The ALJ's Residual Functional Capacity Determination</u>

Plaintiff contends that the ALJ erred when he did not include any exertional limitations in the residual functional capacity finding or in the hypothetical question to the vocational expert despite the fact that he had concluded that Plaintiff suffered from numerous severe

physical impairments.  (Joint Stip. at 12-14.)  This claim, too, is rejected.

The ALJ found that Plaintiff's spinal disorders, fibromyalgia, anemia, chronic pain syndrome with long term opioid use, history of multiple surgeries, and obesity were severe impairments.  He did not include any limitations based on these impairments, however, because he concluded that they did not limit Plaintiff's functioning.  For example, he noted that Plaintiff's fibromyalgia was well treated with medication.  (AR 18.)  He also found that Plaintiff's alleged level of opioid use was not supported by the medical evidence.  (AR 18.)  And he found no evidence that Plaintiff's obesity significantly interfered with his ability to work.  (AR 19.)  As for Plaintiff's orthopedic issues, the ALJ concluded that the objective evidence did not support Plaintiff's claim that they limited him.  (AR 20.)

Because the ALJ concluded that these impairments did not impact Plaintiff's ability to work, a finding Plaintiff has not challenged, he was not required to include any limitations based on them in the residual functional capacity finding or the hypothetical question to the vocational expert.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (explaining ALJ only required to include limitations in residual functional capacity and hypothetical question to vocational expert that are supported by substantial evidence in the record).

## IV. CONCLUSION

For these reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: March 9, 2015.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\KICK, 1444\Memorandum Opinion and Order.wpd